UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA            :

    -against-                      :
                                 07 Cr. 897 (AKH)
ANGEL MORALES, et al.,              :

        Defendants.        :

- - - - - - - - - - - - - - - - - -X


**MEMORANDUM OF LAW RESPONDING TO DEFENDANTS' MOTIONS**


                       **MICHAEL J. GARCIA**
                       **United States Attorney for the**
                       **Southern District of New York**
                       **Attorney for the United States**
                             **of America**


**JEFFREY A. BROWN**
**GLEN G. McGORTY**
**Assistant United States Attorneys**
     **- Of Counsel -**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA          :

   -against-                    :
                          07 Cr. 897 (AKH)
ANGEL MORALES, et al.,            :

        Defendants.       :

- - - - - - - - - - - - - - - - - -X

**MEMORANDUM OF LAW RESPONDING TO DEFENDANTS' MOTIONS**

     The Government hereby responds to the following motions: (1) Defendant Angel Morales' motion for early disclosure of 404(b), *Brady* and *Giglio* materials; (2) defendant Alejandro Orozco's motion for Rule 16 discovery, and for a bill of particulars, and (3) defendant Mario Sosa-Gineste's motion to suppress evidence. For the reasons discussed more fully below, the motions should be denied.

**BACKGROUND**

    1.   <u>The Cocaine Distribution Conspiracy</u>

     The defendants are named in an Indictment charging a single count. Count One of the Indictment charges the defendants with conspiring, in August of 2007, to distribute or possess with the intent to distribute 5 kilograms or more of cocaine. As detailed in the Complaint, dated August 30, 2007, which is attached as an exhibit hereto, in early August of 2007, agents from the DEA were informed by a reliable confidential source that

1

defendant Morales was expecting to take delivery of a large load of cocaine in the New York City area. On August 29, 2007, the defendants were surveilled converging on the area of Penhorn Avenue in Secaucus, New Jersey. DEA agents had, prior to that night, observed exchanges of drugs and money in this location, and various cooperating witnesses had confirmed that the area was frequently used to conduct exchanges of narcotics and narcotics proceeds between sources of supply and New York City-area narcotics distributors.

DEA agents in an unmarked vehicle surveilling Morales in the area of Penhorn Avenue contacted another DEA agent who was also present in the vicinity of Penhorn Avenue conducting surveillance in an unmarked vehicle – but who had been asked to keep a distance to avoid detection by Morales – and informed the agent that Morales appeared to be leaving the vicinity of Penhorn Avenue, and that the agents in the first vehicle would conduct mobile surveillance on Morales by following his vehicle as he drove away.

The second DEA agent, upon hearing that Morales was leaving the location, suspected that Morales had already received a shipment of narcotics, and began driving in the vicinity of Penhorn Avenue in an effort to discern who had delivered the narcotics to Morales. Approximately ten minutes after being informed that Morales had left the location, the agent, driving

in his unmarked vehicle, came upon the other three defendants unloading boxes from a tractor-trailer into a gold Chevrolet Impala sedan in a parking lot.

Based on the agent's experience and training regarding the movement of narcotics and narcotics proceeds, his particular knowledge of this location as a drop-off point for narcotics and narcotics proceeds, the knowledge that Morales was expecting a load of cocaine and had just departed the area, and the fact that the contents of the tractor-trailer was being unloaded into a car, nowhere near a commercial structure or a loading dock, the agent deemed the circumstances suspicious, and asked defendant Sosa-Gineste to exit the car, and asked him what the boxes contained.  Sosa-Gineste indicated that the boxes contained antifreeze.  The agent frisked Sosa-Gineste, and then stopped and questioned defendant Velo, who had been loading boxes into the car.  Velo, who appeared to be very nervous, also answered that the boxes contained anti-freeze, and was subsequently frisked by the agent.

The agent then asked the two men to stand next to the tractor-trailer, which they did, albeit with some hesitation. The agent opened the trunk of Sosa-Gineste's car, which contained cardboard boxes that were marked as if they contained antifreeze. However, at least one of the boxes was not sealed, and the agent could see that the box contained something that appeared to be

black and rectangular – looking nothing like antifreeze.

The agent then asked defendant Orozco, who had been standing inside the tractor-trailer near boxes similar in appearance to those Velo had been loading into the car, to exit the tractor-trailer, which he did.  Orozco also appeared very nervous and frequently glanced at the agent's holstered firearm. The agent directed Orozco to stand next to the trailer with Sosa-Gineste and Velo, which he did, also slowly.

The agent then indicated to Velo that the truck smelled "like weed."[1]  Velo replied that the boxes did contain "weed," at which point the agent placed the three defendants in his unmarked car.  He was subsequently joined at the scene by another agent, who recovered 147 kilograms of cocaine from the boxes in the trunk of the car.  That agent then radioed to the agents who had been following defendant Morales as he drove away from Penhorn avenue, and described the appearance of the boxes from which the cocaine had been recovered.  The agent surveilling Morales, seeing that Morales' car contained boxes matching the description provided by the other agent, conducted a car stop of Morales and recovered 60 kilograms of cocaine from the boxes in Morales' car. Pursuant to a subsequent consent search of a residence associated with Morales, agents recovered what appeared, in their training and experience, to be drug ledgers, as well as a scale and a

---

[1]    The agent did not, in fact, smell marijuana.

4

money-counting machine.

All four men were arrested that night and presented the next day before a magistrate judge.  The defendants were detained on consent without prejudice to a future bail application; defendant Sosa-Gineste subsequently sought and was granted bail, but was never able to meet the conditions set for his release and has remained detained pending trial.

2.  <u>Discovery</u>

On or about October 20, 2007, the Government provided discovery to the defendants.  The discovery consisted of the Complaint, the Indictment, DEA drug lab reports of tests conducted on the seized cocaine, DEA property vouchers pertaining to the items seized from both vehicles and the residence searched pursuant to Morales' consent, and a compact disk containing photographs and images of documents seized incident to the arrest and subsequent search of the residence.

On or about January 4, 2008, the defendants filed the above-described motions.  Oral argument on the motions has been scheduled for February 26, 2008, at 4 p.m.

<b>ARGUMENT</b>

All of defendants' motions are either meritless, premature, moot, or all of the foregoing, and should be denied.

I.  DEFENDANT MORALES' DISCOVERY MOTION SHOULD BE DENIED AS PREMATURE AND MOOT

Morales' motion seeks (1) early disclosure of any

materials the Government intends to offer at trial pursuant to Fed. R. Evid. 404(b), and (2) early disclosure of any *Brady* and *Giglio* materials, among other discovery.

     A.   <u>The Brady Motion</u>

     As the Government explicitly informed the defendants in its October 20, 2007 discovery letter, the Government recognizes its obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny and is aware of its continuing duty of disclosure. Under *Brady*, the Government is required to produce evidence favorable to the accused where such evidence is "material" either to guilt or to punishment. *In re United States* v. *Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). Such evidence is only considered "material" to guilt, thus triggering the Government's disclosure obligations, if, without disclosure of the information, a "reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different." *Id.* at 142. The Government is required to disclose such "material" information "in time for its effective use at trial." *Id.*

     However, the Second Circuit also held in *Coppa* that a district court may not order disclosure far in advance of trial. *Id.* As a general matter, a defendant has no constitutional right to receive *Brady* material prior to trial. *United States* v. *Frank*, 11 F. Supp. 2d 322, 324 (S.D.N.Y. 1998). *See Weatherford*,

429 U.S. at 559; *United States ex rel Lucas* v. *Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974) ("Neither *Brady* nor any other case . . . requires that disclosure under *Brady* must be made before trial."), *cert. denied*, 420 U.S. 939 (1975).  Due process requires only that a defendant receive such information before it is too late for him to make beneficial use of it at trial. *United States* v. *Olson*, 697 F.2d 273, 275 (8th Cir. 1983); *United States* v. *Frank*, 11 F. Supp. 2d at 324.

Courts in this Circuit have repeatedly denied requests for discovery orders pursuant to *Brady* where, as here, the Government has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations under *Brady*.  *See, e.g., United States* v. *Gallo*, 98 Cr. 338 (JGK), 1999 WL 9848, at *7 (S.D.N.Y. Jan. 6, 1999) (denying defendant's motion to compel production of *Brady* material based on Government's representations that "it is aware of its obligations under *Brady* . . . and will produce any *Brady* material to the defense well before trial"); *United States* v. *Yu*, 1998 WL 57079, at *4-*5 (E.D.N.Y. Feb. 5, 1998) (denying defense request that Government provide early disclosure of *Brady* material because Government acknowledged its continuing obligation to provide exculpatory material upon its discovery and assured that it would comply with that obligation); *United States* v. *Perez*, 940 F. Supp. 540, 543 (S.D.N.Y. 1996) ("Courts in this

7

Circuit have repeatedly denied pretrial requests for discovery orders pursuant to *Brady* where the government, as here, has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under <u>Brady</u>.").

In any event, to date, the Government knows of no exculpatory *Brady* information in this case. If such material comes to light, the Government will produce that material in a timely manner to the defense. The Government submits that because it recognizes its continuing obligations under *Brady*, there is no need for any action by the Court. *See United States* v. *Nunez*, 2001 WL 91708, at *7.

B.    <u>The Giglio Motion</u>

Defendant also seeks production of *Giglio* material in advance of trial. Under *Giglio* v. *United States*, 405 U.S. 150, 154 (1972), favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a Government witness. *See Coppa*, 267 F.3d at 139. The Government intends to disclose *Giglio* material sufficiently in advance of trial to permit the defense to review and utilize it effectively at trial; in the majority of cases, pursuant to this Office's longstanding practice, production will be made on the last business day prior to the commencement of the trial. The Government expects to produce

8

Giglio materials in this case consistent with that practice, unless the Government believes that such production would not permit the defense effectively to use such materials effectively at trial, in which case the Government will produce it sooner.

The Second Circuit held in *Coppa* that *Giglio* material also need only be disclosed "in time for its effective use at trial," and that a district court may not order disclosure of *Giglio* material far in advance of trial. *Coppa*, 267 F.3d at 142. Given the Government's representation that it will produce such materials prior to trial, the defendant's request should be denied. *See United States* v. *Nixon*, 418 U.S. 683, 701 (1974) ("[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial"); *Nunez*, 2001 WL 91708, at *8 (denying motion for early production of *Giglio* material, where Government indicated that it intended to produce *Giglio* material "the day before the corresponding witness testifies or, if it appears that additional time will be reasonably required to review such material, sufficiently in advance of such witness's testimony so as to avoid delay"); *United States* v. *Roberts*, 01 Cr. 410 (RWS), 2001 WL 1602123, at *16 (S.D.N.Y. Dec. 14, 2001) (decided after *Coppa*, and holding that it is sufficient for the Government to produce *Giglio* material one day prior to witness's testimony, or earlier if additional time is required to review such material).

C.    The 404(b) Motion

The Government is not presently aware of any 404(b) material it intends to offer against Morales if the matter should proceed to trial.  If such material comes into the possession of the Goverment, the Government will produce it to Morales sufficiently in advance of trial to permit Morales to meaningfully respond to it and challenge its admission.

II.  DEFENDANT OROZCO's MOTIONS SHOULD BE DENIED

Orozco's motion seeks (1) a broad array of discovery items under the category of "Rule 16 Discovery" and (2) a bill of particulars.

A.    The Motion For A Bill of Particulars

The sole legitimate purpose of a bill of particulars is to furnish those facts that are necessary (i) to apprise the defendant of the charges against him with sufficient precision to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense.  *See, e.g., Wong Tai* v. *United States*, 273 U.S. 77, 80-82 (1927).  Therefore, a bill of particulars is only required "'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'"  *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir.), *cert. denied*, 498 U.S. 906 (1990); *see also United States* v. *Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977).  The ultimate

10

test for whether a bill of particulars should be granted is not whether the information sought is merely helpful in preparing for trial, but whether it is *necessary* for the limited notification purposes of a bill of particulars. *See United States* v. *Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985); *United States* v. *Leighton*, 265 F. Supp. 27, 35 (S.D.N.Y. 1968).

For this reason, a bill of particulars generally is not required where the information sought by the defense is readily accessible in some acceptable, alternative form. *United States* v. *Bortnovksy*, 820 F.2d 572, 574 (2d Cir. 1987); *see also United States* v. *Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (no bill of particulars required where indictment spelled out defendants' conduct in scheme, prosecutor met with defense counsel and explained government's contentions, and provided defense with copies of all relevant documents); *United States* v. *Ruiz*, 702 F. Supp. 1066, 1070-1071 (S.D.N.Y. 1989), *aff'd*, 894 F.2d 501 (2d Cir. 1990) (denying bill of particulars where indictment is specific, defendant had adequate discovery and time to prepare, and there had been meetings between government counsel and counsel for the government); *United States* v. *Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983) ("the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defendants are all relevant factors to consider").

Furthermore, a bill of particulars is not to be used to learn: evidentiary detail, *United States* v. *Torres*, 901 F.2d at 234; the precise manner in which the charged crimes were committed, *United States* v. *Andrews*, 381 F.2d 377, 378 (2d Cir. 1967); the manner in which the Government will prove the charges, *United States* v. *Leonelli*, 428 F. Supp. at 882; all the overt acts in furtherance of a conspiracy, *United States* v. *Carroll*, 510 F.2d 507, 509 (2d Cir. 1975); or particular acts that a particular defendant participated in, had knowledge of, or for which he is being held responsible. *United States* v. *Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993).

The rationale for this highly restricted use of a bill of particulars is simple. First, the Government is not required to provide information tantamount to an itemized preview of its proof because of the very real danger in criminal cases that the defendant will tailor his testimony to explain away the Government's predisclosed case. *United States* v. *Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962), *aff'd*, 421 F.2d 509 (2d Cir. 1963). Second, detailed inquiries into the Government's case repeatedly have been rejected because they would unduly restrict the Government in presenting its proof at trial. *See, e.g.*, *United States* v. *Jimenez*, 824 F. Supp. at 363; *United States* v. *Goldman*, 439 F. Supp. 352 (S.D.N.Y. 1977).

Here, the defendants are charged in a clearly worded Indictment detailing the charges that they are facing. In fact, Count One, the conspiracy count, sets forth specific acts perpetrated by the defendants in furtherance of the alleged conspiracy. The defendant's request for the exact date and location of where and when he joined the conspiracy and the identity of all his co-conspirators (beyond those already identified in the Indictment as his co-defendants) is not required to permit the defendant to prepare his defense, to avoid surprise, and to defend against double jeopardy should the need arise. Accordingly, the defendant's request for this information in a bill of particulars should be denied. The request is particularly surprising in light of the fact before the Indictment was filed, the Government charged the defendants in a criminal complaint describing in detail each defendant's actions in connection with the charged conspiracy.

B.    The Rule 16 Discovery Request

Defendant's request for disclosure seeks, among other things, copies of Orozco's statements; co-conspirator statements; the identities of informants; documents and tangible objects; scientific experiments and reports; evidence relating to searches, and 404(b) evidence. Because the discovery request is incredibly broad, and because many of the requests seek items that either do not exist, are not in the custody and control of

13

the Government, or are not called for by Rule 16, this response
addresses only some of Orozco's requests.  The Government, as
stated above, has made Rule 16 discovery and is aware of its
ongoing obligation to produce Rule 16 discovery, and intends to
comply fully with its obligations under the Rule.

       1.   Witness Statements

With respect to copies of Orozco's own statements, any
statement in the Government's possession which is required to be
turned over under the rules of discovery has been turned over.
The only statements of which the Government is aware are those
already provided to the defense by virtue of their being detailed
in the Complaint.

The defendant is not entitled, however, to all
statements made by his co-conspirators, including their
respective post-arrest statements.  With respect to actual co-
conspirators statements, the Government submits that this is
simply an attempt by Orozco to obtain a preview of the
Government's evidence at trial.  To the extent that the
Government intends to offer hearsay evidence pursuant to Rule
801(d)(2)(e) of the Federal Rules of Evidence, the Government
will do so at trial in the manner customary in this District.
The defendant fails to show how anything about this case or any
potential co-conspirator acts or statements would justify an
alternative approach.

14

With respect to the defendant's request for information regarding any expert witnesses who the Government intends to call, the Government is aware of its notice requirements under Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, however, and will comply with them in a timely fashion should it decide that expert testimony will be needed at trial.

### 2.    404(b) Materials

With respect to defendant's request for early disclosure of 404(b) materials, as with Morales, the Government is not presently aware of any 404(b) material it intends to offer against Orozco if the matter should proceed to trial.  If such material comes into the possession of the Goverment, the Government will produce it to Orozco sufficiently in advance of trial to permit Orozco to meaningfully respond to it and challenge its admission.

### 3.    Orozco's Remaining Requests

With respect to Orozco's remaining requests, assuming *arguendo* the items requested are within the ambit of Rule 16 discovery, the Government is not presently aware of, and does not possess within its custody and control, such items, including "recorded testimony," "video tapes and footage," "surveillance video and audio recordings," "kel recordings," "police transmission recordings," "SPRINT reports," "any other audio tapes," "shipping documents," "documents relating to the tractor

15

trailers ownership and registration," "phone records derived from
the cell phones seized at the time of the defendants arrests,"
any documents related to photo arrays or identification
procedures, and documents relating to search warrants.  If the
Government learns of the existence of any such items, they will
be produced to the defendant forthwith.

    III.  DEFENDANT SOSA-GINESTE'S MOTION TO SUPPRESS
          SHOULD BE DENIED WITHOUT A HEARING

        Defendant Mario Sosa-Gineste has moved to suppress all
physical evidence recovered from his person or vehicle, and all
statements made to law enforcement, on August 29, 2007 – the
night of his arrest on these charges – on the grounds that the
evidence and statements were obtained in violation of the Fourth
and Fifth Amendments.

        Sosa-Gineste's motion argues that the DEA agent who
asked him to exit his car, directed him to stand near the
tractor-trailer, and questioned him about what was contained in
the boxes had no basis to stop or detain him, that the agent
lacked probable cause to search his vehicle, and that because
Sosa-Gineste was subjected to custodial interrogation without the
benefit of Miranda warnings, his statement that the boxes in the
trunk of his car contained antifreeze should be suppressed.

        In support of the motion, Sosa-Gineste has submitted an
affidavit containing only two factual assertions: that he was not
read his Miranda warnings prior to responding that the boxes

16

contained anti-freeze, and that none of the boxes in the trunk was unsealed, as the DEA agent asserted in the Complaint. Notably, Sosa-Gineste's affidavit does not dispute that defendant Velo told the DEA agent – moments after the agent approached them – that the boxes being loaded into Sosa-Gineste's car contained "weed."

The Government respectfully submits that the motion can be denied without a hearing. Under all of the facts and circumstances, including, *inter alia*, as set forth in the Complaint, the agent's knowledge of the area surrounding Penhorn Avenue as a narcotics and narcotics proceeds transfer location, the recent presence of Morales in the area and the agent's information that Morales was anticipating a narcotics shipment, and the unusual circumstances of the unloading of the contents of a tractor-trailer into a car, the agent had a reasonable articulable suspicion that criminal activity was afoot. Under those circumstances, the agent was empowered to detain and frisk all three defendants without running afoul of the Fourth Amendment.

In construing the demands of the Fourth Amendment, the Supreme Court has recognized three distinct types of police-citizen encounters: (1) consensual encounters, which may be initiated without any level of suspicion; (2) investigatory detentions, which, if non-consensual, must be supported by a

reasonable, articulable suspicion of criminal activity; and (3) arrests, which are valid only if supported by probable cause. *See United States* v. *Hooper*, 935 F.2d 484, 490 (2d Cir. 1991); *United States* v. *Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995). Here, the initial conversation between Sosa-Gineste and the DEA agent, falls clearly into this second category of an investigatory detenion.

The same is true of the agent's encounters with Velo and Orozco because the same facts and circumstances were present to justify the investigatory detention of those men. The fact that Sosa-Gineste was detained while the agent spoke with Velo and Orozco was completely reasonable under the circumstances, and did not improperly exceed the scope of an investigatory detention. The three men were together and were behaving in a nervous manner; the DEA agent, who was alone and who did not unholster his weapon during his encounter with the three defendants, was entitled to ask the men to stand together while he questioned them briefly in order to ensure the agent's own safety.

Immediately after the men had gathered at the side of the tractor-trailer, defendant Velo made the statement – unchallenged by any defendant – that the boxes contained "weed." There can be no dispute that, at that point, the agent had probable cause, based on Velo's statement alone, to search the

18

boxes in Sosa-Gineste's car for contraband.

In short, none of the agent's actions preceding Velo's statement violated Sosa-Gineste's Fourth Amendment rights, and Velo's statement provided the probable cause to conduct the search of Sosa-Gineste's car, pursuant to which the 147 kilos of cocaine were recovered. Sosa-Gineste's motion to suppress the cocaine should therefore be denied without a hearing, as none of the facts set forth in his affidavit create a factual dispute material to his investigatory detention and the eventual seizure of the cocaine.

In light of Velo's statement concerning the content of the boxes, the Government need not, and does not, rely on the agent's prior observation that the boxes did not, in fact, contain antifreeze as claimed by the defendants, to provide probable cause to justify the search of Sosa-Gineste's car. Therefore, Sosa-Gineste's assertion – contrary to the agent's testimony in the Complaint – that none of the boxes in the trunk of his car was unsealed, is immaterial to the resolution of the motion, and does not forestall its denial. Similarly, the Government need not, and does not, rely on Sosa-Gineste's statement that the boxes contained antifreeze to justify the search and seizure of the cocaine, and does not expect to offer that statement at trial against Sosa-Gineste. Sosa-Gineste's

19

motion with respect to that statement is therefore moot.[2]

        Because on the undisputed facts Sosa-Gineste was lawfully detained, and because on the undisputed facts there was probable cause to search the boxes in Sosa-Gineste's car, Sosa-Gineste's motion can be denied without a factual hearing.  If, however, the Court believes that a hearing is necessary to decide the motion, the Government stands ready to present witnesses in aid of the Court's determination.

---

        [2]    To be clear, the Government believes that Sosa-Gineste's statement was lawfully obtained by the agent and was not taken in violation of his rights.  The Government believes, however, that even if Sosa-Gineste had never made any statements whatsoever, Velo's statement that the boxes contained "weed" provides an independent and sufficient basis for the search and seizure of the cocaine.  Should the Court decide that the admissibility of Sosa-Gineste's statement is relevant to its determination of the lawfulness of the seizure of cocaine from Sosa-Gineste's car, the Government intends to argue and, if necessary, prove at a hearing, that the statement should not be suppressed.

**CONCLUSION**

For the reasons discussed above, defendants' motions should be denied.

Dated:    New York, New York
          February 1, 2008

                              Respectfully Submitted,

                              MICHAEL J. GARCIA
                              United States Attorney

                    By:    __/s/_____
                           Jeffrey A. Brown/Glen G. McGorty
                           Assistant United States Attorneys
                           (212) 637-1110/2505